Michael MORIARITY, Plaintiff–
Appellant–Cross–Appellee,

v.

UNITED TECH. CORP. REPRESENTED
EMPLOYEES RETIREMENT PLAN,
Defendant–Appellee–Cross–Appellant.

Nos. 96–9684, 97–7032.

United States Court of Appeals,
Second Circuit.

Argued Aug. 28, 1997.

Decided Oct. 2, 1998.

Joseph David Farrell, Marlborough, CT (Law Offices of Joseph David Farrell), for Plaintiff–Appellant–Cross–Appellee.

Theodore J. Tucci, Jean E. Tomasco, Hartford, CT (Robinson & Cole), for Defendant–Appellee–Cross–Appellant.

Before: KEARSE and McLAUGHLIN, Circuit Judges, and TRAGER, District Judge*.

PER CURIAM:

Plaintiff Michael Moriarity appeals from a judgment entered in the United States District Court for the District of Connecticut (Dorsey, C.J.) denying his motion for summary judgment and granting a similar cross-motion by defendant, United Technologies Corporation Represented Employees Retirement Plan ("UTC Plan"). Relying on the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), plaintiff had sought to overturn a determination by defendant's Benefit Claims Appeal Committee ("Committee") rejecting his claim of entitlement to disability benefits under the UTC Plan. The district court agreed with plaintiff's contention that the UTC Plan's Summary Plan Description ("SPD") was "inaccurate and inconsistent" with the Plan and that the Committee's interpretation of the SPD was "arbitrary and capricious." See Moriarity v. United Techs. Corp. Represented Employees Retirement Plan, 947 F.Supp. 43, 51–52 (D.Conn.1996). Nonetheless, it ruled that plaintiff was required, but had failed, to demonstrate that he detrimentally relied upon the Summary Plan Description.

Though this court has discussed the reliance issue in a number of previous decisions, see Heidgerd v. Olin Corp., 906 F.2d 903, 909 (2d Cir.1990) (reliance issue not appealed); Howard v. Gleason Corp., 901 F.2d 1154,

* The Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

1161 (2d Cir.1990) (reliance not found, but court "leave[s] to another day the question of whether reliance upon a faulty plan document is a prerequisite to ERISA recovery"), it has not been the subject of a definitive ruling. For the reasons explained below, we find it unnecessary to reach the issue in this case as well. Nor do we resolve defendant's argument, raised in its cross-appeal, that the Committee's interpretation of the SPD, like that of the plan, should be governed by the "arbitrary and capricious" standard, *see Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and that the district court failed to apply that standard. We affirm because we conclude that even under a de novo standard of review, the Committee's reading of the SPD was the only reasonable and correct one.

## Background

### (1)

Plaintiff was employed by United Technologies Corporation—Hamilton Standard Division ("UTC") for twenty-one years. Some time after he voluntarily resigned from UTC on September 19, 1989, plaintiff applied for disability benefits from the Social Security Administration ("SSA"). The SSA determined plaintiff to be disabled as of March 9, 1992, almost two and one-half years after he left UTC. In late 1994, plaintiff contacted UTC to seek information regarding disability benefits under the UTC Plan. The United Technologies Participant Service Center ("Service Center") responded to plaintiff's inquiry by informing him that he was not eligible for disability benefits under the UTC Plan because his employment with UTC terminated before the SSA determined him to be disabled. The Service Center, however, informed plaintiff that he had fulfilled the eligibility requirements for a retirement pension, which he could seek "anytime after your 55th birthday." Letter from Benefits Claim Appeal Committee, Jt.App., p. 33.

Insisting that he had a present right to disability benefits under the UTC Plan, plaintiff presented a claim to the Committee. On February 7, 1995, the Committee considered and, for the same reason given

previously to plaintiff, unanimously denied his claim for disability benefits. Reviewing the UTC Plan and SPD, the Committee concluded that "a Participant must be actively employed at the time of his disability to be eligible for disability retirement payments." Minutes of February 7, 1995, meeting of Benefit Claims Appeal Committee. The Committee informed plaintiff of its determination by letter dated March 8, 1995. Plaintiff continued to dispute the Committee's decision and was informed by letter dated November 21, 1995, that it was final. On December 1, 1995, plaintiff initiated the present action.

### (2)

The UTC Plan provides both retirement benefits and employee welfare benefits, including health, disability and death benefits. *See* 1978 Plan, Articles 5–7. It is an "employee benefit plan," within the meaning of 29 U.S.C. § 1002(3) and is governed by ERISA, 29 U.S.C. § 1001 *et seq.* Retirement benefits are available to UTC Plan Participants at the "Normal Retirement Date" (65) or after "Early Retirement" (a date prior to 65, but "after attaining age 55 and completing at least ten years of Continuous Service"). 1978 Plan, § 5.5. Alternatively, "[i]f, for any reason other than death or retirement, the employment of a Participant ... is terminated after he has completed at least 10 years of Continuous Service and before he has attained age 55, he shall be entitled to receive a Vested Retirement Annuity," commencing at age 65. *Id.* at § 8.1. Thus, under the Plan, retirement benefits are not lost if the Participant is terminated or leaves UTC for employment elsewhere, so long as ten years of service were completed. *See id.* Accordingly, it is clear that, since plaintiff was employed at UTC for over ten years, he was a Plan Participant and is currently eligible to receive vested retirement benefits.

Disability benefits are also available under the UTC Plan to Participants who have at least ten years of continuous service and receive disability benefits under the Social Security Act. The disability date which triggers payment of these benefits is defined under the UTC Plan as "the first day of the

fifth month ... prior to the month for which a Participant first receives a disability benefit under ... [the] Social Security Act." 1978 Plan, § 6.1(b).

However, the UTC Plan is explicit that, unlike the case with retirement benefits, disability benefits are not vested. To determine when a Participant is entitled to non-vested benefits, one must examine those plan provisions that define eligibility requirements.

Article Two of the UTC Plan sets out the definitions of key Plan terms. A UTC Plan "Employee" is defined as "any employee of the Employer who is included in a unit of employees covered by a collective bargaining agreement between employee representatives and the Employer, which agreement provides that the employees in such unit shall participate in the Plan." 1978 Plan, § 2.18. A UTC Plan "Participant" is defined as "any Employee who has become a participant in the Plan in accordance with Article Four." *Id.* at § 2.27. Article Four describes the manner in which Employees both become Plan Participants and cease to possess such status. A UTC Plan Employee becomes a Participant under the 1978 Plan if he was a participant under the prior UTC Plan on December 31, 1977, or if he is over age 25 with one year of service or has completed five years of service. *See id.* at § 4.1.

Article Four also provides under "Cessation of Participation" that "[a]n employee who has become a Participant in the Plan shall cease to be a Participant on the first to occur of the following: (a) The date on which he ceases to be an employee of the Employer and the Affiliates." 1978 Plan, § 4.6. Under this definition, it is clear that plaintiff is not eligible under the UTC Plan for disability payments because he was not a Plan Participant at the time he was found disabled by the Social Security Administration.

This determination, however, does not dispose of plaintiff's claim because he claims entitlement to disability benefits under the terms of UTC's Summary Plan Description or SPD, not the UTC Plan. Pursuant to a statutory duty imposed by Title 29 U.S.C. § 1022, defendant provided plaintiff and other Plan Participants with an SPD. Under UTC's SPD, "Employee" is defined as "any person who is covered by a collective bargaining agreement which provides for participation in the plan." SPD, p. 4. The SPD describes eligibility requirements in the following manner: "As an employee of the company, you *automatically* become a participant in the plan on the first January 1 or July 1 after you have: completed one year of eligibility service and reached age 21, or completed five years of eligibility service regardless of age." *Id.*

The SPD, in an entirely separate section entitled "Vested Rights," describes "vested" benefits, such as retirement benefits, as those available "[i]f you leave United Technologies before retirement but after you complete at least 5 years of continuous service ... [which] means you are entitled—*beginning at your normal retirement date*—to income from the plan based upon the full benefits you earned up to the time you left the company." SPD, p. 10 (emphasis added). This section makes no mention of disability benefits as a vested benefit. In an entirely separate section, which precedes the section on "Vested Rights," and is labeled "Disability Pension," the SPD states that a disability pension is available "[i]f you become permanently and totally disabled ... [and] have at least 10 years of continuous service, and receive Social Security disability benefits." SPD, p. 10. However, unlike the UTC Plan, the SPD does not include a "Cessation of Participation" section, and, therefore, omits the definition of "Participant" found in Article Four of the UTC Plan, which states that "[a]n Employee who has become a Participant in the Plan shall cease to be a Participant on ... [t]he date on which he ceases to be an employee." 1978 Plan, § 4.6. Thus, the SPD did not specifically inform plaintiff that he must be employed at UTC at the time he makes a claim for non-vested plan benefits, such as disability benefits. This omission is the source of plaintiff's claim.

Lastly, one other provision of the SPD should be mentioned. The SPD provides that benefit claims that are denied may be appealed to the Benefit Claims Appeal Committee, which has "the right to interpret the provisions of the plan, [making] its deci-

sion[s] ... conclusive and binding." SPD, p. 14.

### (3)

The district court entered summary judgment against plaintiff because it ruled that he failed to show that he detrimentally relied on the SPD. *See Moriarity v. United Techs. Corp. Represented Employees Retirement Plan,* 947 F.Supp. 43, 52–53 (D.Conn.1996).

First, however, the district court concluded that the SPD conflicted with the Plan. The district court reasoned that, though the UTC Plan's definition of " 'Participant' clearly provides that an individual ceases to be a 'Participant' when he or she ceases to be an employee," *id.* at 51, the SPD lacks any such definition, and, therefore, fails to inform employees of the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). "Nowhere does the SPD set forth the circumstances under which an employee who has completed 10 years of continuous service and has been determined to be disabled by Social Security will nevertheless be ineligible for disability benefits." *Moriarity,* 947 F.Supp. at 52. Consequently, the district court concluded, the SPD is "inaccurate and inconsistent" with the UTC Plan and "does not apprise employees of the circumstances in which they may be denied benefits." *Moriarity,* 947 F.Supp. at 51. In light of this conclusion, the district court reasoned that the UTC Plan had failed to fulfill its obligation under ERISA "to provide accurate and comprehensible information to employees." *Id.* at 52. Echoing a well-established proposition, the district court then held that "when the SPD conflicts with the terms of the plan, the SPD controls ... the determination of Plaintiff's rights under the Plan."

*Id.* at 51–52; *see Heidgerd v. Olin Corp.,* 906 F.2d 903, 907–08 (2d Cir.1990)(ERISA "contemplates that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on descriptions ... in the summary. To allow the Plan to contain different terms that supersede the terms of the Booklet [SPD] would defeat the purpose of providing ... summaries.").[1]

Next, the district court addressed plaintiff's challenge to the Committee's interpretation of his right to disability benefits under the SPD. The district court acknowledged that the Committee's decision should be reviewed under the "highly deferential" arbitrary and capricious standard, yet it concluded that the decision violated this standard because the Committee's reading of the SPD as only "providing disability benefits to current employees" was "arbitrary and capricious." *See Moriarity,* 947 F.Supp. at 52.

Though the district court agreed with plaintiff in finding that the SPD conflicted with the UTC Plan, and that the Committee's determination was arbitrary and capricious, as indicated, it denied him recovery by holding that he failed to show that he relied on the SPD's inconsistent language to his detriment. *See Moriarity,* 947 F.Supp. at 52. Accordingly, the district court entered summary judgment in favor of the UTC Plan. This appeal by plaintiff followed.

### Discussion

Although, as the district court noted, the SPD here does not explicitly state that disability benefits are not available to employees who become disabled after they leave UTC, no other reading of the SPD is plausi-

---

1. *See also Aiken v. Policy Management Sys. Corp.,* 13 F.3d 138, 140 (4th Cir.1993) ("under controlling precedent in this Circuit, representations in a SPD control over inconsistent provisions in an official plan document"); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 982 (5th Cir.1991) ("Like the Sixth and Eleventh Circuits, this Court holds ... that if there is a conflict between the summary plan description and the terms of the policy, the summary plan description shall govern."); *Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 136 (6th Cir.1988) ("This Circuit has decided that statements in a sum-

mary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern."); *McKnight v. Southern Life & Health Ins. Co.,* 758 F.2d 1566, 1570 (11th Cir.1985) (defendant "asserts that if a conflict arose between the plan and the summary, the plan should prevail. Such an assertion defeats the purpose of the summary. It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan.").

ble. There is nothing in the SPD's language, structure or printed layout that could reasonably lead a participant to believe that benefits continue to be available to an employee for a disability that develops after he or she leaves UTC. First, the SPD's discussion of vested benefits specifically refers only to retirement benefits. It states that "you are entitled—beginning at your normal retirement date—to income from the plan." It is difficult to see how this language could be interpreted by a UTC employee as referring to disability benefits, which are discussed in a completely separate section of the SPD, entitled "Disability Pension." This section immediately precedes the "Vested Rights" section on the same page in which retirement benefits are discussed.

Second, as plaintiff reads the SPD, once he worked ten years for UTC, he became entitled to benefits for any disability that arose after he quit UTC and even if he went to work at a different company for the next twenty years. An average plan participant reading this SPD could not credibly come away believing that, if he left UTC and was subsequently found disabled, he was entitled to a lifetime's worth of long-term disability benefits from UTC. Although we are not required to do so, we would strain to avoid such a preposterous result. We, therefore, conclude that even under a de novo review, the Committee's interpretation of the SPD is the correct one and that it does not permit plaintiff to receive benefits for a claim based on a disability that developed years after his employment with UTC terminated.

## Conclusion

For the reasons stated above, we affirm the judgment of the district court. Defendant's cross-appeal is dismissed as moot.

TRAGER, District Judge, Concurring:

I join the Per Curiam opinion, but I think it important to note an issue not adequately addressed by defendant's alternative argument that forms the basis for the per curiam's affirmance.

Defendant's Benefit Claims Appeal Committee ("Committee") asserts that its interpretation of the Summary Plan Description ("SPD") should control unless it is found to be arbitrary and capricious. The Committee claims that the failure of the district court to accord appropriate deference to the Committee's interpretation of the SPD will have a negative impact on the Committee's authority to interpret the plan in the future and possibly an adverse impact on the plan's financial stability. However, defendant's contention that the "arbitrary and capricious" standard of review should apply to an SPD raises a difficult issue. That issue is whether the assumption that defendant makes throughout its argument, that *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) is applicable to a summary plan description in the same way as it is to a full plan, is correct.

In *Firestone,* the Supreme Court addressed the issue of the appropriate standard for reviewing a plan administrator's interpretation of a plan. The Court held that a "denial of benefits ... is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. Subsequent cases in this Circuit make clear that, in such a case, the appropriate standard of review is whether the plan administrator's decision is "arbitrary and capricious." *See Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 441 (2d Cir.1995)(and cases cited therein). In light of these holdings, and the provisions both in the UTC plan and SPD granting the Committee authority to interpret "the Plan," the Committee argues that its decision should be considered under a deferential standard of review, which the district court failed to do.

The present case, however, does not turn on the Committee's interpretation of the UTC Plan, but rather on its interpretation of the SPD. Under ERISA § 1022, employees are entitled to use and rely on an SPD, in lieu of the full plan, as their main source of benefits information. The statute states that the SPD is to be

written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and com-

# 162

prehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. 29 U.S.C. § 1022(a)(1). An SPD attempts to define a plan's key terms in simpler, more concise language, while remaining accurate and comprehensive. In particular, an SPD must contain information pertaining to "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." *Id.* at § 1022(b).[1] Hence, it would seem that under the policy objectives of § 1022, an employee should be entitled to rely on his or her reasonable reading of an SPD, even if the full plan contains provisions negating that reading. *See Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir. 1990)(ERISA "contemplates that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on descriptions").[2] It can, therefore, be argued, that applying *Firestone* to SPD's would undermine the policy objectives behind Congress's creation of an SPD requirement because it would require a court to uphold a plan administrator's non-arbitrary and capricious interpretation of an ambiguity or omission in an SPD even if the participant reasonably relied on an alternate, more favorable, reading of the SPD's terms.

On the other hand, an argument could be made that the trustees' interpretation of the SPD ought to control. That is, if the rule were that an employee is entitled to rely on his reasonable interpretation of the SPD, even if another reasonable or perhaps more reasonable—and *ipso facto* non-arbitrary and capricious—interpretation is posited by the plan administrator, the administrator would be encouraged to close any potential loopholes or ambiguities in the SPD. As a result,

the SPD would become more complex, longer and inevitably more difficult to understand, thereby undermining Congress's goal of having SPD's that the average employee can comprehend.

In the present case, there is no need to resolve this issue because, assuming the Committee's interpretation of the SPD is subject to a de novo review, the SPD here cannot reasonably be interpreted as plaintiff contends.

---

1. Congress's motivation for mandating that employers provide plan participants with SPD's was, among other considerations, its conclusion "that ERISA's predecessor legislation had failed to provide adequate notification of rights for the plan participants." *Pierce v. Security Trust Life Ins. Co.*, 979 F.2d 23, 26–27 (4th Cir.1992). These concerns were expressed in House and Senate Reports. *See* H.R. Rep. No. 807, 93rd Cong., 2d Sess. 60 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4640, and S.Rep. No. 383, 93rd Cong.2d Sess. (1975), reprinted in 1974 U.S.C.C.A.N. 4639, 4890, 4935.

2. Cases holding that in the event of a conflict between an SPD and a plan, the former controls, implicitly rest on the idea that participants are entitled to rely on the SPD, despite the terms of the plan. *See Hansen v. Continental Ins. Co.*, 940 F.2d 971, 981 (5th Cir.1991)("Any other rule would be, as Congress recognized, grossly unfair to employees and would undermine ERISA's requirement of an accurate and comprehensive summary.").