**John LAYAOU, Plaintiff,**

v.

**XEROX CORPORATION, Peter De-Mauro, individually and in his capacity as an employee of Xerox Corporation, The Retirement Income Guarantee Plan (RIGP), Defendants.**

**No. 95–CV–6388L.**

United States District Court, W.D. New York.

Sept. 28, 1999.

Nira T. Kermisch, Rochester, NY, for John Layaou, plaintiff.

Margaret A. Clemens, Nixon, Peabody LLP, Rochester, NY, for Xerox Corporation, defendants.

*DECISION AND ORDER*

LARIMER, Chief Judge.

## INTRODUCTION

Plaintiff, John Layaou, originally commenced this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The original complaint alleged that defendants Xerox Corporation ("Xerox") and Peter DeMauro, plaintiff's former supervisor, terminated his employment in January 1994 on account of his age. Plaintiff (who was born in 1940) also asserted an age discrimination claim under the New York State Human Rights Law ("HRL"), N.Y.Exec.L. § 296, as well as what apparently purported to be a breach-of-contract claim alleging that Xerox had refused to pay him certain benefits to which he was entitled under the "Xerox Retirement Income Guarantee Plan" ("RIGP" or "the Plan").

In a Decision and Order filed on March 27, 1998, I granted in part and denied in part defendants' motion for summary judgment. I dismissed plaintiff's ADEA and HRL claims, and denied defendant's motion to dismiss the claim relating to the RIGP benefits. I also found, however, that the latter claim was governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.,* and gave plaintiff thirty days to file an amended complaint repleading that claim under ERISA.

Plaintiff subsequently filed an amended complaint asserting a cause of action under ERISA. Despite my prior dismissal of

plaintiff's age discrimination claims, the amended complaint also contained the same ADEA and HRL claims that had been asserted in the original complaint, apparently because of plaintiff's attorney's belief that it was necessary to do so in order to preserve plaintiff's right to appeal my prior dismissal of those claims. On November 3, 1998, plaintiff filed a Second Amended Complaint adding certain allegations relating to plaintiff's exhaustion of his remedies under the RIGP. Defendants have now moved for summary judgment dismissing the Second Amended Complaint.[1]

## FACTUAL BACKGROUND

The facts relating to plaintiff's ERISA claim are fully set forth in my prior summary judgment decision, familiarity with which is assumed, and will not be repeated at length here. In general, the complaint alleges that at the time of his termination, plaintiff was entitled to a supplement to his retirement benefits under the RIGP. Plaintiff states that Xerox, contrary to the terms of the Plan (at least as they had been represented to plaintiff), deducted from his RIGP monthly benefit $513 to which he is entitled.

Plaintiff alleges that he submitted a request for additional benefits, and that his request was denied, as was his subsequent appeal to the Plan Administrator. Defendants do not contend that plaintiff has failed to exhaust his remedies under the Plan.

In support of their motion for summary judgment, defendants rely upon certain provisions in the RIGP relating to the calculation of benefits. Specifically, § 1.9 states:

> Where a Member has received a distribution from his Cash Balance Retirement Account ["CBRA"] balance prior to the relevant time, it shall be assumed that his actual Cash Balance Retirement Account balance at the relevant time includes an amount equal to the sum so distributed as it would have increased during the period from the time of the distribution to the relevant time if such

1. For the sake of convenience, hereafter the term "the complaint" will be understood to refer to the Second Amended Complaint, unless otherwise noted.

sum had continued to be invested in the Cash Balance Retirement Account.

Defendant's Motion for Summary Judgment Ex. C at 5.

Section 1.41 similarly states:

Where a Member has received a distribution from his Transitional Retirement Account ["TRA"] prior to the relevant time, it shall be assumed that his actual Transitional Retirement Account balance at the relevant time includes an amount equal to the sum so distributed as it would have increased or decreased during the period from the time of the distribution to the relevant time if such sum had been invested in the Separate Fund (as defined in the Profit Sharing Plan) or the Segregated Assets Fund, in whichever the Member participated at the time of the distribution.

*Id.* at 12.

Section 9.6 states:

*Nonduplication of Benefits.* In the event any part of or all of a Member's accrued benefit is distributed to him prior to his Normal Retirement Date, if Section 8.8 does not apply to such distribution and such Member at any time thereafter recommences active participation in the Plan, the accrued benefit of such Member based on all Years of Participation shall be offset by the accrued benefit attributable to such distribution.

*Id.* at 47.

Section 1.45(f) states in part:

The benefit payable under this Plan to such member who has received a prior distribution will be reduced by the previously distributed amount with adjustments to the "relevant time" under Section 1.9 or 1.41, or at the time of the subsequent distribution under Section 4.2.

*Id.* at 14.

The significance of these provisions lies in the fact that plaintiff, who began working for Xerox in 1972, was terminated in 1983, but rehired in 1987. Upon his termination in 1983, plaintiff had received a lump-sum distribution of retirement benefits in the amount of $22,453.88. When plaintiff left Xerox's employ again in 1995, the amount of his RIGP benefits was offset by the amount of that prior distribution, plus the amount of the earnings that this distribution would have earned if it had remained in the CBRA and the TRA.

The chief basis for plaintiff's claim is that the Summary Plan Description ("SPD") that was provided to him did not put him on notice that the amount of any prior distributions would be used as an offset against future RIGP benefits. At the very least, plaintiff states, he was not put on notice that an *appreciated* amount would be used, in other words, that the amount would be calculated as if it had remained in the CBRA and the TRA.

## DISCUSSION

### I. Nature of Plaintiff's Claim[2]

 Before considering the merits of plaintiff's ERISA claim and defendants' motion for summary judgment, I must first determine precisely what type of ERISA claim plaintiff is asserting. That is not readily apparent, since the complaint

**2.** As stated, I have already dismissed plaintiff's claims under the ADEA and HRL. Regardless of whether an omission of those claims from the amended complaint would have affected plaintiff's right to appeal my prior dismissal of them, *see St. Paul Fire and Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.*, No. 91 Civ. 0748, 1996 WL 19028 *7 (S.D.N.Y. Jan.17, 1996) ("this circuit's law does not establish whether a plaintiff who has had certain of its claims dismissed must reassert those claims in an amended pleading in order to preserve its rights on appeal"); *see* *also Mechigian v. Art Capital Corp.*, 639 F.Supp. 702, 704 (S.D.N.Y.1986) (describing plaintiff's fear that failure to include previously dismissed claims in amended complaint might result in waiver of his right to appeal as "entirely unjustified" and stating that "if anything, all plaintiff needed to do to preserve that right would be to insert one sentence in the Amended Complaint stating that it was incorporating the claims in the original complaint"), I dismiss them for the reasons stated in my March 27, 1998 Decision and Order.

itself simply cites 29 U.S.C. § 1132, without specifying the subsection upon which this cause of action is based.

Plaintiff's papers in response to defendants' motion do little to shed any additional light on this question. Although the complaint expressly requests an award of benefits allegedly due plaintiff under the terms of the RIGP, which suggests that this claim is brought under § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)), in his brief in opposition to defendants' motion plaintiff appears to characterize his claim either as a claim for breach of fiduciary duty under § 1132(a)(2), or as a claim for equitable relief under § 1132(a)(3). I find that plaintiff has not stated a claim under either section, and that his claim must be treated as a claim for benefits under § 1132(a)(1)(B).

In *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court held that recovery for breach of fiduciary duty in violation of 29 U.S.C. § 1109 "inures to the benefit of the plan as a whole," as opposed to individual participants. The Court pointed out that under the language of § 1109, "the potential personal liability of the fiduciary is 'to make good *to such plan* any losses *to the plan* ...'" rather than to individual beneficiaries. *Id.* The Court stated that "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142, 105 S.Ct. 3085. The Court added that "[t]o recover the benefits due her, [plaintiff] could have filed an action pursuant to § 502(a)(1)(B) to recover accrued benefits...." *Id.* at 146–47, 105 S.Ct. 3085.

Here, plaintiff seeks benefits to which he claims he is entitled under the Plan. Pursuant to *Russell*, therefore, he cannot seek relief for breach of fiduciary duty pursuant to § 1132(a)(2). *See Lee v. Burkhart*, 991 F.2d 1004, 1009 (2nd Cir.1993) ("*Russell* therefore bars plaintiffs from suing under

section 502(a)(2) because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan"); *Walsh v. Eastman Kodak Co.*, 53 F.Supp.2d 569, 571 n. 2 (W.D.N.Y.1999); *Manning v. Niagara Mohawk Power Corp.*, No. 95–CV–1149, 1997 WL 216214 *3 (N.D.N.Y. Apr.15, 1997).

In determining whether plaintiff has stated a claim under § 1132(a)(3), I am guided by the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). In *Varity*, the Court, in assessing whether relief under § 1132(a)(3) was available to the plaintiffs in that case, reviewed § 1132 as a whole. The Court stated that "[f]our of that section's six subsections focus upon specific areas," while "[t]he language of the other two subsections," one of which is § 1132(a)(3), "creates two 'catchalls,' providing 'appropriate equitable relief' for 'any' statutory violation." *Id.* at 512, 116 S.Ct. 1065. The Court reasoned that "these catchall provisions operate as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id.* Noting that "the statute authorizes 'appropriate' equitable relief," the Court stated that it expected that "courts, in fashioning 'appropriate' equitable relief, will keep in mind the 'special nature and purpose of employee benefit plans,' and will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others." *Id.* at 515, 116 S.Ct. 1065. Therefore, the Court reasoned, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.*

Here, plaintiff seeks benefits allegedly due him under the terms of the RIGP. Section 1132(a)(1)(B) provides him with an appropriate remedy, and he therefore cannot proceed under § 1132(a)(3) as well. *See Fitch v. Chase Manhattan Bank, N.A.*, 64 F.Supp.2d 212, 228–29 (W.D.N.Y. 1999) (interpreting *Varity* "to mean that plaintiffs may not seek the same relief under 29

U.S.C. § 1132(a)(3) as they are seeking under 29 U.S.C. § 1132(a)(1)(B)") (citing *Joyce v. Curtiss–Wright Corp.*, 992 F.Supp. 259, 270–71 (W.D.N.Y.1997), *aff'd,* 171 F.3d 130 (2d Cir.1999)); *Dittman v. Dyno Nobel, Inc.*, No. 97–CV–1724, 1998 WL 865603 *8 (N.D.N.Y. Nov.24, 1998) (since plaintiff was seeking benefits under the terms of a plan, Congress had "provided adequate relief" for plaintiff pursuant to § 1132(a)(1)(B), and further equitable relief enjoining defendants from violating the terms of the plan was not appropriate).

That is so even though plaintiff appears to concede that the Plan itself does provide for the deductions applied by defendants. Plaintiff's argument is that the SPD failed to inform him of these deductions (or at least of the fact that the amount deducted would be treated as having appreciated over the years), that the terms of the SPD control, and that defendants cannot rely on Plan provisions of which plaintiff had no knowledge.

Even though plaintiff relies on the SPD rather than the Plan itself, this claim remains a claim for benefits pursuant to § 1132(a)(1)(B), because when the terms of a plan and the terms of the plan summary are inconsistent with each other, the terms of the summary control the determination of the plaintiff's rights *under the plan. Moriarity v. United Tech. Corp. Represented Employees Retirement Plan*, 158 F.3d 157, 160 (2d Cir.1998); *Heidgerd v. Olin Corp.*, 906 F.2d 903, 908 (2d Cir.1990).

In addition, though plaintiff discusses his alleged reliance on the SPD, this is not a case where the plaintiff alleges that the plan administrator made affirmative misrepresentations to him concerning his benefits or rights under the plan, and that he relied on those misrepresentations to his detriment. *See, e.g., Ballone v. Eastman Kodak Co.*, 109 F.3d 117 (2d Cir.1997); *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 668–69 (2d Cir.1994); *Cerasoli v. Xomed, Inc.*, 972 F.Supp. 175, 178–80 (W.D.N.Y.1997); *Manning*, 1997 WL 216214 *4. Such misrepresentations can give rise to a claim for breach of fiduciary duty for which § 1132(a)(3) may provide a remedy. Here, however, plaintiff simply alleges that the SPD makes no provision for an offset of appreciated, previously received benefits, and that to the extent that the Plan and the SPD conflict in that regard, the SPD controls. I therefore view his claim as a claim "to recover benefits due to him under the terms of his plan ..." pursuant to § 1132(a)(1)(B).[3]

---

**3.** I also find that even if plaintiff's claim *could* be treated as one "to obtain ... appropriate equitable relief ... to redress [a violation of ERISA] or ... to enforce any provisions of [ERISA] or the terms of the plan" under § 1132(a)(3), it lacks merit. As the Third Circuit stated in *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310 (3d Cir.), *cert. denied,* 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991), in which the plaintiff alleged that a certain document constituted a defective SPD because it did not explain certain eligibility requirements contained in the plan, and that defendant was therefore obligated to pay increased life insurance benefits despite the fact that the plaintiff's decedent had not met those requirements, the only equitable doctrine under which plaintiff could possibly recover increased benefits would be estoppel. As in the Second Circuit, the rule in the Third Circuit is that equitable estoppel applies in ERISA cases only in "extraordinary circumstances." *Id.* at 1319; *Bonovich v. Knights of Columbus*, 146 F.3d 57, 62 (2d Cir.1998); *Lee,*

991 F.2d at 1009. After reviewing the circumstances in *Gridley*, the Court of Appeals concluded that the plaintiff had asserted what was "at best an ordinary equitable estoppel claim." *Gridley*, 924 F.2d at 1319.

Even if I were to consider plaintiff's claim as arising under § 1132(a)(3), I would reach the same result here. In particular, plaintiff has failed to show several elements of an ERISA equitable estoppel claim, such as a *promise, reliance on the promise, or injury* caused by the reliance. *See Bonovich*, 146 F.3d at 62–63. The only conceivable "promise" here was a negative one: that plaintiff's benefits would be reduced, which they were. Moreover, I fail to see how plaintiff relied to his detriment on that "promise." As explained below, plaintiff has received the benefits to which he is entitled, and it is not clear what plaintiff alleges he would have done differently, or how he would be better off today, had he known that his benefits would not be as high as he expected.

## II. Standard of Review

■ Defendants contend that the court should not conduct a *de novo* review of the Plan Administrator's denial of plaintiff's request for additional benefits, but should review it only for abuse of discretion. Plaintiff does not state precisely what standard the court should apply, but contends that since he does not allege that the Plan Administrator misinterpreted the Plan itself, but only that defendants cannot rely on Plan provisions of which plaintiff had no notice, the abuse-of-discretion standard does *not* apply.

■ In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "[c]onsistent with established principles of trust law, ... a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." The Second Circuit has stated that "[w]here the plan reserves such discretionary authority, denials are subject to the more deferential arbitrary and capricious standard, and may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Kinstler v. First Reliance Std. Life Ins. Co.,* 181 F.3d 243, 249 (2d Cir.1999) (quoting *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995)); *see also O'Shea v. First Manhattan Co. Thrift Plan & Trust,* 55 F.3d 109, 112 (2d Cir. 1995) (denial is arbitrary and capricious where plan administrator or fiduciary has

"impose[d] a standard not required by the plan's provisions, or interpret[ed] the plan in a manner inconsistent with its plain words") (citation and internal quotation marks omitted). The burden of establishing that the arbitrary-and-capricious standard applies is upon the plan administrator, since "the party claiming deferential review should prove the predicate that justifies it." *Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226, 230 (2d Cir.1995).

In the case at bar, I find that the arbitrary-and-capricious standard does apply. Although plaintiff argues that he is not challenging the Plan Administrator's interpretation of the Plan itself, but is instead relying on the language of the SPD, that is of no moment, because in effect plaintiff is challenging the Plan Administrator's interpretation of the SPD; he contends that in light of the SPD's alleged failure to apprise plaintiff of the deduction of prior benefits, the Plan Administrator should not have denied plaintiff's request for benefits. *See, e.g., Moriarity,* 158 F.3d at 160–61 (finding that although terms of SPD controlled over conflicting terms of plan, defendant's Benefit Claims Appeal Committee's interpretation of SPD was correct).[4] Since both the RIGP and the SPD give defendants discretion to interpret the Plan, *see* RIGP § 10.2 ("In the administration of the Plan the Administrator may, subject always to the requirements of Section 10.5 ... [c]onstrue the Plan and the Trust Agreement thereunder and resolve any ambiguity with respect thereto"); SPD at 119 ("The Company has the exclusive right to interpret the appropriate plan provisions; its decisions are conclusive and binding"),[5] the court can

---

4. I note that the SPD states that "[i]n the event of a discrepancy between these [Plan] documents and the summaries contained in this handbook, the plan documents are controlling." *You and Xerox: Benefits for Salaried Employees* (submitted by plaintiff on April 21, 1999) at 118. I need not decide whether plaintiff's rights are governed by the RIGP or the SPD, however, since as explained below, I find no inconsistencies between them.

5. Plaintiff has submitted a copy of the 1990 edition of the SPD. Defendants have submit-

ted portions of a different edition, although the date of that edition is not apparent. *See* Defendant's Motion for Summary Judgment Ex. H. Except for differences in pagination, in all relevant respects the two versions are largely identical. Where they are not identically worded, they convey the same information and are consistent with each other; there appears to be no contention here that one or the other should govern or that there are material differences between them. Page references in this Decision and Order are to the 1990 edition, unless otherwise noted.

only overturn the Plan Administrator's decision if it is arbitrary and capricious. *Kinstler,* 181 F.3d at 249.

█ Ultimately, however, the question of what standard of review should be applied in this case is inconsequential, because I find that even if I were to conduct a *de novo* review, plaintiff is not entitled to the additional benefits he seeks. The RIGP clearly calls for the deductions at issue, and nothing in the SPD suggests otherwise.

First, while plaintiff contends that "[n]owhere in [the SPD] is there a reference to the [Plan] documents . . .," Plaintiff's Memorandum of Law at 2, the SPD clearly apprises the reader that participants' rights are governed by more detailed plan documents:

> While this handbook summarizes the key features of the plans in your Xerox benefit program, it does not cover all the details. The full terms and conditions of your benefit program are described in the various plan texts and insurance contracts. These documents legally govern the operation of the plans. In the event of a discrepancy between these documents and the summaries contained in this handbook, the plan documents are controlling.

SPD at 118.

The SPD also refutes plaintiff's claim that "[n]owhere in this [SPD] book is there even a suggestion that Plaintiff may have access to the actual plan," Plaintiff's Memorandum of Law at 2. At page 118, the SPD states: "Copies of all plan documents, as well as the annual reports of plan operations filed with the Internal Revenue Service, are available for review any time during normal business hours at the office of the plan administrator." It also states on page 117, under the heading, "Your Rights Under ERISA," that "ERISA provides that all plan participants shall be entitled to: . . . Obtain copies of all plan documents and other plan information upon written request to the plan administrator."

Plainly, then, the SPD put plaintiff on notice that there were other, more detailed documents governing his rights under the RIGP and the other plans in which he was a participant, and that he could obtain copies of those documents if he wished. Plaintiff's assertions to the contrary are flatly contradicted by the SPD itself.

As for the offset for previously received benefits, in the section discussing the RIGP, the SPD states, "The amount you receive may also be reduced if you had previously left the Company and received a distribution at that time. . . ." SPD at 67. Apparently recognizing that this did put plaintiff on notice that prior distributions might reduce the amount of his benefit, plaintiff now takes the position that his benefits should only have been reduced by the amount of the original distribution, not by the amount to which the original distribution would have grown to had it continued to be invested in the CBRA and the TRA. Plaintiff contends that because the SPD did not state that the amount would be so calculated, defendants cannot rely on the Plan language providing for such accrual.

█ While plaintiff is correct that, in the event of an inconsistency between the terms of a plan and the terms of the SPD, the SPD controls, *Moriarity,* 158 F.3d at 160; *Heidgerd,* 906 F.2d at 908, I see no inconsistency or conflict here. The SPD simply states that if the employee had previously left Xerox and received a distribution at that time, the amount of his future benefit "may . . . be reduced. . . ." It does not purport to say how much the benefit will be reduced, or the exact formula that will be used to calculate the benefit. There is nothing misleading about this statement whatsoever. If anything, it should have alerted plaintiff that, if this were a concern to him, he should have requested a copy of the plan documents, or asked the Plan Administrator to explain the effect that his prior distribution would have on his future RIGP benefits.

Nor do I believe that the SPD could be considered ambiguous in this respect. Although there is authority that any ambiguities in a plan or SPD should be construed in favor of the plan participant, *see, e.g., Rhorer v. Raytheon Engineers and Constructors, Inc.,* 181 F.3d 634, 642 (5th Cir. 1999); *UAW v. Yard–Man, Inc.,* 716 F.2d 1476, 1480 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), those cases generally involve language that could arguably be interpreted in two different ways. *See, e.g., Rhorer,* 181 F.3d at 642 (SPD was ambiguous as to whether requirement that participant be actively at work on full-time basis to qualify for coverage applied to optional life insurance); *Yard–Man,* 716 F.2d at 1480 (provision in collective bargaining agreement "could reasonably be construed … as either solely a reference to the nature of retiree benefits or as an incorporation of some durational limitation as well").

This is consistent with cases from the Second Circuit. The Court of Appeals has stated that "[l]anguage is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140 (2d Cir. 1999) (quoting *O'Neil v. Retirement Plan for Sal. Empl. of RKO Gen., Inc.,* 37 F.3d 55, 59 (2d Cir.1994)); *Moriarity v. United Technologies Corp. Represented Employees Retirement Plan,* 947 F.Supp. 43 (D.Conn. 1996) (defining term "ambiguous" as "susceptible to more than one meaning"), *aff'd,* 158 F.3d 157 (2d Cir.1998).

Here, the SPD's statements about the effect of a participant's receipt of prior benefits is not "capable of more than one meaning." It states that one's benefits may be reduced if one has previously received benefits. All of that is true. The mere fact that is does not describe in detail precisely how much future benefits

will be reduced does not render it ambiguous.

The essence of plaintiff's claim, then, is not that the SPD misrepresented the terms of the Plan or that it was genuinely ambiguous, but that it was not sufficiently detailed. "However, ERISA's disclosure provisions do not require that the plan summary contain particularized criteria" for coverage or calculation of benefits. *Jones v. Kodak Med. Assistance Plan,* 169 F.3d 1287, 1292 (10th Cir.1999). "Indeed, such a requirement would frustrate the purpose of a summary—to offer a layperson concise information that she can read and digest." *Id.; see also Moriarity,* 158 F.3d at 162 (observing that allowing employee to rely on his own interpretation of SPD, even if plan administrator had contrary, but equally reasonable interpretation, would encourage administrator to attempt to erase every potential ambiguity in SPD, with result that "the SPD would become more complex, longer and inevitably more difficult to understand, thereby undermining Congress's goal of having SPD's that the average employee can understand") (Trager, J., concurring); *Martin v. Blue Cross & Blue Shield of Virginia, Inc.,* 115 F.3d 1201, 1205 (4th Cir.) ("because the Plan gives more detail than the SPD but does not contradict its terms, there is no conflict between the Plan and the SPD"), *cert. denied,* —— U.S. ——, 118 S.Ct. 629, 139 L.Ed.2d 609 (1997); *Stahl v. Tony's Bldg. Materials, Inc.,* 875 F.2d 1404, 1407 (9th Cir.1989) ("To require ERISA summary plan descriptions to include accurate and complete information about all of the different factual settings in which a given pension plan rule might apply would lead to the promulgation of 'summaries' many pages in length, perhaps even longer than the plan itself, that would be of no use to the ordinary employee").

Furthermore, the relevant portions of the SPD clearly comply with the requirements of ERISA, which sets forth in great detail what information an SPD must contain. *See* 29 U.S.C. § 1022.[6] The SPD is

---

6. § 1022. Summary plan description

(a) A summary plan description of any employee benefit plan shall be furnished to par-

ticipants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information de-

"written in a manner calculated to be understood by the average plan participant," and is "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." It also describes "circumstances which may result in ... loss of benefits," namely, the participant's prior receipt of benefits at the time of his prior departure from Xerox's employment. Nowhere in § 1022, however, is a requirement that the SPD explain precisely the extent of any such loss or reduction of benefits, or how any possible deductions will be calculated.

I conclude, therefore, that plaintiff has not presented a basis upon which a factfinder could reasonably conclude that the SPD precluded the Plan Administrator from reducing plaintiff's benefit amount based on the appreciated amount of his prior distribution in accordance with the terms of the RIGP. Not only was the Administrator's determination in that regard *not* arbitrary and capricious, it was plainly correct.

## CONCLUSION

Defendant's motion for summary judgment (Item 60) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

scribed in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title.

(b) The summary plan description shall contain the following information: The name and type of administration of the plan; in the case of a group health plan (as defined in section 1191b(a)(1) of this title), whether a health insurance issuer (as defined in section 1191b(b)(2) of this title) is responsible for the financing or administration (including payment of claims) of the plan and (if so) the name and address of such issuer; the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this chapter and the Health Insurance Portability and *Accountability Act of 1996* with respect to health benefits that are offered through a group health plan (as defined in section 1191b(a)(1) of this title) and the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title).