John LAYAOU, Plaintiff–Appellant,

Paul J. Frommert, et al., Intervenors,

v.

XEROX CORPORATION, Peter De-Mauro, individually and in his capacity as an employee of Xerox Corporation and The Retirement Income Guarantee Plan (RIGP), Defendants–Appellees.

No. 99–9336.

United States Court of Appeals, Second Circuit.

Argued Sept. 29, 2000.

Decided Jan. 18, 2001.

Nira T. Kersmich, Rochester, NY, for plaintiff-appellant.

Robert H. Jaffe, Robert H. Jaffe & Associates, P.A., Springfield, NJ, for intervenors.

Margaret A. Clemens, Nixon Peabody L.L.P., Rochester, NY, for defendants-appellees.

Before MESKILL, CALABRESI, and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge:

Plaintiff-appellant John Layaou ("Layaou") appeals from a September 29, 1999 grant of summary judgment entered in the United States District Court for the Western District of New York (David G. Larimer, *Chief Judge* ) in favor of Xerox Corporation ("Xerox") and The Retirement Income Guarantee Plan (the "Plan") dismissing Layaou's claim for additional benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§ 1101 *et seq.*[1] *Layaou v. Xerox Corp.*, 69 F.Supp.2d 419 (W.D.N.Y.1999) ("*Layaou II* "). We hold that the summary plan description violated the disclosure requirements of ERISA, 29 U.S.C. § 1022. For the reasons discussed below, we vacate the district court's grant of summary judgment on Layaou's ERISA claim and remand for further proceedings.

## BACKGROUND

Layaou began working for Xerox in 1972 and voluntarily left the company in 1983 during a period of layoffs. At that time, Xerox distributed to Layaou the retirement benefits he had earned, amounting to a lump-sum distribution of approximately $22,400.[2] In September 1987, Xerox rehired Layaou as a full-time employee, where he remained until he was laid off as part of a reduction-in-force in January 1994. Layaou earned retirement benefits during this second period of employment with Xerox.

Xerox's retirement plan provides that an employee will receive benefits upon retirement in an amount equal to the highest result of three alternative calculation methods. The first calculation method is the retirement plan formula ("RIGP Formula"), which is a guaranteed annuity calculated by multiplying years of service (up to thirty years) by 1.4 percent of the highest-average yearly pay.[3] If an employee retires early, defined as retiring after the age of 55 but before the age of 65, that individual's RIGP Formula benefit is reduced by five percent for each year that he or she receives retirement benefits before reaching the age of 65. For rehired employees, the number of years of service includes the total time they worked for Xerox, not just the period of employment following rehire.

The second method for calculating retirement benefits under the Plan is based on the employee's Cash Balance Retirement Account ("CBRA"), which consists of yearly contributions by Xerox of an amount equal to five percent of the employee's salary, accruing interest at a yearly fixed rate of one percent above the one-year Treasury Bill rate. For those employees having commenced their tenure with Xerox prior to the end of 1989, their CBRA also includes the transferred balance of a Profit Sharing Retirement Account that Xerox maintained for each employee up until December 31, 1989.

Finally, the third calculation method under the Plan is based on the employee's Transitional Retirement Account ("TRA"). The TRA is only applicable to employees hired by Xerox prior to 1989. The TRA consists of the employee's transferred Profit Sharing Retirement Account balance as of December 31, 1989, increasing based on the investment results of the funds in which the employee's Profit Sharing Retirement Account was invested as of that date.

Each year Xerox gave its employees a copy of a brochure entitled "You and Xerox—Benefits for Salaried Employees" to fulfill its ERISA obligation of providing employees with a summary plan descrip-

1. Layaou also appeals from the district court's March 30, 1998, grant of summary judgment in favor of defendants-appellees Xerox and Peter DeMauro dismissing Layaou's age discrimination claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law § 296. *Layaou v. Xerox Corp.*, 999 F.Supp. 426, 430–33 (W.D.N.Y.1998) ("*Layaou I*"). In a separate summary order filed today, we affirm the district court's grant of summary judgment dismissing Layaou's age discrimination claims.

2. Specifically, in January 1983, Layaou received a lump-sum distribution in the amount of $21,258.88, and shortly thereafter, received a second distribution of $1,095.00 as a prorated bonus.

3. The Plan defines highest-average pay as the average of the employee's five highest-paying calendar years with Xerox. The years do not have to be consecutive.

tion ("SPD") of the Plan. Xerox also gave its employees a yearly estimate of their individual benefits to date. Xerox did not distribute a copy of the Plan itself to its employees, but it was available to them at the company's Human Resources office.

Layaou received from Xerox his 1994 yearly estimate of benefits prior to the effective date of his layoff. This form estimated his RIGP Formula benefit to be $924 per month. It noted that the benefits under the RIGP Formula "will grow as your length of service and your earnings increase ... [and] may be reduced if you receive amounts before age 65 or receive amounts from another Xerox retirement plan." The form listed the current value of his CBRA as $18,403 and of his TRA as $9,244.

Layaou's retirement from Xerox became effective on April 19, 1995. Upon his retirement, the plan administrator recalculated his benefits to take into account Xerox's prior lump-sum distribution of benefits upon the termination of his first period of employment. Rather than simply subtracting out the value of the prior distribution, the plan administrator recalculated Layaou's benefits using what Xerox terms a "phantom account" offset, an offset of an employee's earned benefits by the value of a hypothetical account containing the original distributed sum plus the amount the distribution would have earned had it been invested.[4] As described in full below, this "phantom account" offset applies directly to the calculation of benefits under the TRA and CBRA and indirectly to the RIGP Formula benefit through comparison of the three calculations.

The plan administrator thus determined Layaou's retirement benefit as follows:

(1) The administrator calculated plaintiff's RIGP Formula benefit based on his total length of service (including his time with Xerox prior to his rehire in 1987) and his highest average yearly compensation. This amount was then reduced to account for Layaou retiring prior to reaching the age of 65.[5] His RIGP Formula benefit came out to approximately $480 per month.

(2) The administrator then determined plaintiff's TRA amount. The administrator first calculated the amount plaintiff's first distribution would have grown had it remained in the Profit Sharing Retirement Account and the successor TRA. The administrator then added this TRA "phantom account" offset to the amount actually in plaintiff's TRA account. The value of the TRA with the "phantom account" offset was approximately $94,644.

(3) The administrator determined plaintiff's CBRA amount using this same "phantom account" offset. The value of the CBRA with the "phantom account" offset was approximately $98,212.

(4) Because the CBRA with the "phantom account" offset was larger than the TRA with the "phantom account" offset, the plan administrator converted the CBRA with the "phantom account" offset to a monthly annuity of approximately $749 in order to compare it to the RIGP Formula benefit.

(5) The administrator then compared the CBRA monthly annuity with "phantom account" offset of $749, to the RIGP Formula monthly annuity of $480. The administrator chose the larger of the two amounts, the CBRA, as the benefit payment method.

---

**4.** Xerox's use of the term offset to describe the calculation method is a slight misnomer because, as described in full below, the "phantom account" offset involves adding and then subtracting out the value of the phantom account.

**5.** Layaou was 55 years old at the time his retirement became effective in April 1995.

(7) For payment purposes, the plan administrator then subtracted out the "phantom account" offset from the CBRA and converted that value to a monthly annuity. The CBRA benefit was recalculated to be approximately $145 per month.

Thus, the administrator informed Layaou that he would receive a retirement benefit of $145 per month, a payment significantly smaller than any of the three calculation amounts set forth in Xerox's 1994 yearly estimation of benefits for Layaou.

Layaou submitted a request to Xerox for additional benefits, disputing the plan administrator's use of the "phantom account" offset. Xerox denied the request, and the plan administrator denied Layaou's subsequent appeal. After exhausting his remedies under the Plan, Layaou filed this action in federal court.

Layaou's original and amended complaints did not specify the legal theory for his claim for additional benefits. In a March 30, 1998 decision and order, the district court denied defendants' motion for summary judgment on Layaou's benefit claim.[6] The district court found that the claim was governed by ERISA and granted Layaou thirty days to replead the ERISA cause of action and to name and timely serve the proper defendants for that claim. *Layaou I,* 999 F.Supp. at 434–36.

Layaou filed a second amended complaint, alleging a claim for additional benefits under ERISA, 29 U.S.C. § 1132. Defendants' moved for summary judgment on the ERISA claim. In a decision and order entered on September 29, 1999, the district court granted defendants' motion. Because Layaou's complaint did not specify under which subsection of 29 U.S.C. § 1132 his claim fell, the district court identified Layaou's claim as one for benefits under 29 U.S.C. § 1132(a)(1)(B) and not a claim for breach of fiduciary duty under § 1132(a)(2) or for equitable relief under § 1132(a)(3).[7] *Layaou II,* 69 F.Supp.2d at 422–24. The court then determined that it should review the plan administrator's calculation of benefits under an abuse of discretion standard, rather than conduct a *de novo* review.[8] *Id.* at 425–26. The district court reviewed Xerox's SPD and found that it did not conflict with the terms of the Plan, was not ambiguous, contained sufficient details to give employees notice of situations in which their benefits might be reduced, and complied with the requirements for SPDs under ERISA. *Id.* at 426–28. Accordingly, the district court granted summary judgment in favor of defendants, concluding that "plaintiff has not presented a basis upon which a factfinder could reasonably conclude that the SPD precluded the Plan Administrator from reducing plaintiff's benefit amount based on the appreciated amount of his prior distribution in accordance with the terms of the Plan. Not only was the Administrator's determination in that regard *not* arbitrary and capricious, it was plainly correct." *Id.* at 428 (emphasis in original).

Plaintiff now appeals the district court's grant of summary judgment in favor of defendants on his ERISA claim. After plaintiff filed his notice of appeal, Paul J. Frommert and thirteen other current and former Xerox employees (the "Frommert plaintiffs") filed a motion to intervene as plaintiffs in this action. The Frommert

---

6. In that same decision and order, the district court granted defendants' motion for summary judgment on Layaou's age discrimination claims. *Layaou I,* 999 F.Supp. at 429–34. We affirm the dismissal of his discrimination claims in a separate summary order filed today.

7. The district court observed in a footnote that even if plaintiff's claim could be treated as one for equitable relief under § 1132(a)(3), it lacked merit. *Layaou II,* 69 F.Supp.2d at 424 n. 3.

8. The district court noted that even if it conducted a *de novo* review of the plan administrator's calculation of benefits, it would have reached the same result. *Layaou II,* 69 F.Supp.2d at 426.

plaintiffs argued that this Court should permit them to intervene because the disposition of Layaou's appeal could impair their ability to protect the ERISA claims they had asserted against Xerox and its plan administrators in a separate action. This Court granted the Frommert plaintiffs' motion to intervene.

## DISCUSSION

█ We review the district court's grant of summary judgment in favor of defendants *de novo. See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 764 (2d Cir. 1998). In doing so, we must consider the evidence in a light most favorable to the plaintiff, drawing all reasonable inferences in his favor. *See id.* at 764–65. A court may only grant summary judgment "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support [his] case is so slight." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994). Reversal of the district court's grant of summary judgment "is required if there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 77 (2d Cir. 1996) (internal quotation marks omitted).

*Adequacy of Disclosure in the SPD*

*ERISA Requirements*

ERISA requires that the participants and beneficiaries of any employee benefit plan be provided with a summary plan description ("SPD"), a thorough and easy to understand summary of the benefit plan. 29 U.S.C. § 1022(a). The SPD must be "written in a manner calculated to be understood by the average plan participant" and must "be sufficiently accurate and comprehensive to apprise such participants and beneficiaries of their rights and obligations under the plan." *Id.* ERISA "contemplates that the summary [plan description] will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907–08 (2d Cir.1990).

Generally, for a SPD to meet the disclosure requirements of 29 U.S.C. § 1022, "the limitation or elimination of technical jargon and of long, complex sentences [and] the use of clarifying examples" is required. 29 C.F.R. § 2520.102–2(a). The SPD must include, among other things, a description of the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b); *see also* 29 C.F.R. § 2520.102–3(*l*) (an SPD must contain "a statement *clearly identifying* circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture or suspension of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits") (emphasis added). Regulations promulgated under ERISA prescribe the format of a SPD:

> The format of the summary plan description must not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception[s], limitations, reductions, [or] restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant ... [and] shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits.

29 C.F.R. § 2520.102–2(b); *see also Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1040 (2d Cir.1985) (requiring SPD to explain "full import" of provisions affecting employee); *Pompano v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 914 (2d Cir.1982) (stating that the plan at issue "was written up in summary form in simple and unmistakable language easy enough for the average plan participant to be reasonably appraised of

his rights and obligations under the Plan."). In analyzing Layaou's claim, we are mindful that Congress intended that ERISA function as a comprehensive remedial statute designed to safeguard pension benefits. *See Geller v. County Line Auto Sales*, 86 F.3d 18, 22 (2d Cir.1996) (citing 29 U.S.C. § 1001) (statement of Congressional purpose).

## Xerox's SPD

The district court determined that the essence of Layaou's ERISA claim was that Xerox's SPD did not provide him notice that his future benefits would be offset by an appreciated amount of his prior distributions. The district court held that the SPD complied with the requirements of § 1022 with respect to this reduction in benefits. *Layaou II*, 69 F.Supp.2d at 427–28. We disagree and find, as a matter of law, that the SPD failed to provide notice to Layaou and other similarly situated employees that their future benefits would be offset by an appreciated value of their prior lump-sum benefits distributions.[9]

The only relevant language in Xerox's SPD states that "[t]he amount you receive may also be reduced if you had previously left the Company and received a distribution at that time." The SPD does not mention the term "phantom account," describe the "phantom account" offset concept, or even indicate that the choice among the three methods of calculating future benefits will be made by first adding on, and then later offsetting, not the amount of the prior distributions but instead an appreciated value of the prior lump-sum distributions. Nor does the SPD offer any example of how to calculate

benefits for individuals who had received prior lump-sum distributions.

The confusion caused by the lack of notice as to how benefits would be calculated for employees who were rehired after receiving lump-sum benefits distributions was compounded by the individualized yearly calculation of estimated benefits Xerox sent to its employees. Layaou's 1994 yearly benefits statement informed him that Xerox calculated his RIGP Formula benefit to be $924 per month and his CBRA and TRA benefits to be lump-sums of $18,403 and $9,244 respectively. This estimation of benefits, like the SPD, makes no mention of the "phantom account" offset or the fact that the benefits of rehired employees would be offset by an appreciated amount of prior distributions. The sole reference to reductions based on prior distributions is under the RIGP Formula benefit, to which no "phantom account" offset applies in any event. That notation merely states that: "Your RIGP benefit *may be reduced* if you ... receive amounts from another Xerox retirement plan." (emphasis added). Even this type of general statement does not appear under the estimations of the CBRA or TRA benefits.

In *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032 (2d Cir. 1985), this Court set forth the standard that an SPD must meet to satisfy ERISA's disclosure requirements under 29 U.S.C. § 1022. The amendment to the plan at issue in *Chambless* addressed how employees' benefits would be affected if they accepted employment with companies that did not participate in the same plan. *Id.* at 1035–36. Soon after the amendment was adopted, the plaintiff employee accept-

---

**9.** At oral argument, counsel for the Frommert plaintiffs raised for the first time the argument that the Plan also violated ERISA, 29 U.S.C. § 1054(d) and (e), because the Plan failed to give rehired employees the option of repaying prior distributions of benefits back into the Plan. Because we are reversing the district court's grant of summary judgment in favor of defendant on Layaou's ERISA claim on other grounds, we need not address whether this argument falls within an excep-

tion to the "well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Commodity Futures Trading Comm'n v. Vartuli*, 228 F.3d 94, 106 (2d Cir.2000) (internal quotation marks omitted). However, because we are remanding this case to the district court for other purposes, the district court may consider whether the complaint may be amended to include a claim under 29 U.S.C. § 1054(d) and (e).

ed employment with a company that did not participate in the plan, which caused his benefits to be reduced from approximately $920 per month beginning at age 55 to about $470 per month beginning at age 65. *Id.* at 1036. In finding that the notice of the amendment failed to comply with § 1022, we stated that because "neither of the publications regarding [the amendment] explained *the full import* of the interaction of the wage-related provision and the Amendment for someone in [the plaintiff's] position[,] ... the notice was insufficient to satisfy the requirements of ERISA, 29 U.S.C. § 1022(a)·and (b)...." *Id.* at 1040 (emphasis added); *see also Bowerman v. Wal–Mart Stores, Inc.,* 226 F.3d 574, 587 (7th Cir.2000) (holding that because "the explanations provided in the SPD ... did not provide the critical information needed by employees in [plaintiff's] circumstances[,] ... the [ ] SPD lacked the clarity and completeness required by § 1022").

Likewise, we find that Xerox's SPD did not describe the "full import" of the effect of receiving a prior lump-sum distribution on the calculation of future retirement benefits upon rehire, and therefore, did not meet the requirements of § 1022. The SPD fails to "clearly identif[y]" the "loss ... of [ ] benefits" caused by a prior lump-sum distribution. 29 C.F.R. § 2520.102–3(*l*). The general language contained in the SPD that the benefits of employees who received prior distributions "may also be reduced" provided inadequate notice to Layaou that an appreciated value of his prior lump-sum distributions would first be added to his CBRA and TRA before making the comparison with the RIGP Formula annuity, and then would be offset from his retirement benefits, let alone provide notice that such an approach is mandatory. The SPD could have given sufficient no-

tice, for example, by stating something like, "Any future benefit *will be offset* by the *appreciated value* of any prior distribution assuming that amount remained in the plan," or by providing an example calculating the benefits of an employee who had received a prior distribution. Given the significant reduction in Layaou's monthly benefits—from an estimated $924 per month to approximately $145 per month, one single sentence stating that Layaou's benefits "may also be reduced" if he "left the Company and received a distribution at that time" is wholly inadequate to provide meaningful notice regarding this loss of benefits. Because the SPD does not satisfy ERISA's disclosure requirements and employees are entitled to rely on the SPDs as their primary source of information about their benefits, we need not consider whether the language contained in the plan documents themselves was different than the language in the SPD.[10] *See Heidgerd,* 906 F.2d at 908 ("It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complicated document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary booklet.") (internal quotation marks omitted).

Because we find that Xerox's SPD failed to provide adequate notice to Layaou that his retirement formula would be determined by adding to the CBRA and TRA an appreciated value of his prior distributions and then offsetting the outcome by that amount, we find that the plan administrator's interpretation of the SPD as permitting application of the "phantom account" offset to Layaou's benefits is unreasonable under either an arbitrary and capricious or *de novo* standard of review.

---

10. The Plan provided for a general rule of non-duplication of benefits and for an offset of appreciated prior distributions of benefits for CBRAs and TRAs. The Plan did not provide for any similar offset for the RIGP Formula benefit or describe the how the three sources of benefits would be compared for employees who had received prior benefits distributions. In any event, Xerox only distributed the SPD and not the plan itself to its employees.

In reaching this conclusion, we express no view on whether the deferential standard of review for a plan administrator's interpretation of a plan under *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), is applicable to a plan administrator's interpretation of an SPD, where it has been determined that the SPD violates the disclosure requirements of 29 U.S.C. § 1022. *Cf. Moriarity v. United Tech. Corp. Represented Employees Retirement Plan,* 158 F.3d 157, 158 (2d Cir.1998) (per curiam) (declining to resolve the issue of what standard of review applies under *Firestone* to a plan administrator's interpretation of an SPD while holding plaintiff's interpretation unreasonable even under *de novo* review). Because the district court held that the plan administrator's calculation of Layaou's benefits was reasonable based on its erroneous finding that the SPD complied with ERISA's disclosure requirements, *Layaou II,* 69 F.Supp.2d at 426–28, we vacate the district court's grant of summary judgment in favor of defendants on Layaou's ERISA claim.

## II. *Remand*

We have stated that if a summary plan "is inadequate to inform an employee of his rights under the plan, ERISA empowers plan participants and beneficiaries to bring civil actions against plan fiduciaries for any damages that result from the failure to disclose" under 29 U.S.C. § 1132(a)(1)(B).[11] *Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990). The circuit courts are divided as to whether proof of actual detrimental reliance upon a faulty SPD is a prerequisite to recovery. *Compare Palmisano v. Allina Health Sys., Inc.,* 190 F.3d 881, 887–88 (8th Cir.1999) (reliance or prejudice must be shown); *Andersen v. Chrysler Corp.,* 99 F.3d 846, 859 (7th Cir.1996) (reliance, bad faith, or active concealment must be

shown); *Aiken v. Policy Management Sys. Corp.,* 13 F.3d 138, 141 (4th Cir.1993) (per curiam) (reliance or prejudice must be shown); *McKnight v. Southern Life and Health Ins. Co.,* 758 F.2d 1566, 1570–71 (11th Cir.1985) (reliance was shown); *and Govoni v. Bricklayers, Masons & Plasterers Int'l Union,* 732 F.2d 250, 252 (1st Cir.1984) (same) *with Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 137 (6th Cir.1988) (employee need not show detrimental reliance to recover). The district courts in this Circuit that have addressed this issue have also reached differing conclusions. *Compare Manginaro v. Welfare Fund of Local 771,* 21 F.Supp.2d 284, 295–96 (S.D.N.Y.1998) (permitting plaintiff to prevail upon a showing of either detrimental reliance upon, or possible prejudice flowing from, a faulty summary plan document) *and Ritzer v. National Org. of Indus. Trade Unions Ins. Trust Fund Hosp., Med., Surgical Health Benefit,* 822 F.Supp. 951, 955 (E.D.N.Y.1993) (same), *with Moriarity v. United Techs. Corp. Represented Employees Retirement Plan,* 947 F.Supp. 43, 53 (D.Conn.1996) ("Without having read the SPD, Plaintiff could not have relied on it or been prejudiced or misled by its contents."), *aff'd,* 158 F.3d 157 (2d Cir.1998) (per curiam). The issue has not been definitively resolved in this Circuit. *See Moriarity,* 158 F.3d at 157–58; *Howard,* 901 F.2d at 1160–61. Because the issue of whether Layaou is required to demonstrate reliance and/or prejudice was not fully briefed on appeal, we leave it to the district court to decide in the first instance whether Layaou must demonstrate reliance on and/or prejudice flowing from Xerox's faulty SPD in order to prevail on his § 1022(a) claim, and if so, whether Layaou's statements in his affidavit that he read and relied upon the faulty SPD and his yearly benefit calculation are sufficient to raise a triable issue of fact on this issue.

11. Because we find that the district court erred in granting summary judgment against Layaou on his claim for benefits under 29 U.S.C. § 1132(a)(1)(B), we need not address the district court's suggestion that plaintiff's claim for benefits also could not survive summary judgment if analyzed as a claim for breach of fiduciary duty under § 1132(a)(2) or for equitable relief under § 1132(a)(3).

Because the district court erred in granting summary judgment based on its finding that the SPD provided sufficient notice to Layaou regarding the offset to his future benefits, a number of significant issues were not decided or even considered below. On remand, the district court should consider, among other things, what damages, if any, the faulty SPD caused to Layaou. In making this determination, the district court may examine what, if anything, Layaou would have done differently had he been given adequate notice that his future benefits would be reduced by an appreciated amount of his prior benefits distributions.[12] The district court may also consider whether, because the SPD did not explain that the comparison between the three methods of calculating benefits would use inflated values for the CBRA and TRA accounts, but actually pay benefits in lower amounts after accounting for the phantom account offset, Xerox is bound to apply a benefit formula that does not conflict with the language of the SPD. *See Moriarity,* 158 F.3d at 160.

## CONCLUSION

In a separate summary order filed today, we affirm the district court's grant of summary judgment dismissing Layaou's age discrimination claims. In this opinion, we hold that the district court erred in granting summary judgment on Layaou's ERISA claim based on its determination that the SPD met the disclosure requirements of 29 U.S.C. § 1022. We vacate the district court's grant of summary judgment on Layaou's ERISA claim and remand for further proceedings consistent with this opinion.

---

12. To the extent Layaou received an annual benefit statement after he left Xerox and elected to receive the lump-sum distribution, he could not have relied on that statement at the time he made his election. However, if Layaou made investment decisions subsequent to leaving Xerox based on the information contained in his annual benefits statement—and experienced losses on those investments—then the annual statement may be relevant with respect to his claim for damages.