**John LAYAOU, Plaintiff,**

v.

**XEROX CORPORATION, et al., Defendants.**

**No. 95–CV–6388L.**

United States District Court, W.D. New York.

Aug. 26, 2004.

Nira T. Kermisch, Rochester, NY, for Plaintiff.

Margaret A. Clemens, Nixon Peabody LLP, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

Plaintiff, John Layaou, brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.*, against his former employer, Xerox Corporation ("Xerox") and its pension plan, known as the Retirement Income Guarantee Plan ("RIGP" or "Plan"). Plaintiff seeks additional benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).

On January 18, 2001, the Court of Appeals for the Second Circuit issued a decision in this case vacating this Court's prior grant of summary judgment in favor of defendants. The Court of Appeals also remanded the case to this Court for further proceedings. *Layaou v. Xerox Corp.,* 238 F.3d 205, 213 (2d Cir.2001).

Following remand, the parties engaged in additional discovery concerning the issues that the Second Circuit had directed this Court to consider. Both sides have now moved for summary judgment.

### FACTUAL BACKGROUND

The facts giving rise to plaintiff's claims are set forth in detail in the prior decisions of this Court, *see* 69 F.Supp.2d 419 (W.D.N.Y.1999); 999 F.Supp. 426 (W.D.N.Y.1998), and of the Court of Appeals, familiarity with which is assumed.[1] Only a brief summary of the facts will be recited here.

Layaou began working for Xerox in 1972, and voluntarily left in 1983. While employed at Xerox, Layaou was a participant in the Plan. When Layaou left Xerox in 1983, he elected to take the retirement benefits that he had earned up to that time. He took a lump-sum distribution of approximately $22,400.

In September 1987, Xerox rehired Layaou. He remained at Xerox until January 1994, when he was laid off as part of a reduction in force. Layaou earned additional retirement benefits during this second period of employment with Xerox.

Layaou's retirement became effective on April 19, 1995. In calculating Layaou's benefit, the Plan administrator took into account Xerox's 1983 lump-sum distribution by using what is referred to as a "phantom account" offset. It is the application, and effect, of that offset that gave rise to plaintiff's claims in this case. An analysis of those claims, then, requires an understanding of the way in which Plan participants' retirement benefits were calculated.

Upon retirement, a participant's benefit would be derived from one of three alternative calculation methods. The first, known as the Retirement Income Guarantee Plan ("RIGP") method, used a mathematical computation based on the participant's highest average annual pay and his years of service.

The other two methods are based on the employee's Cash Balance Retirement Account ("CBRA") and his Transitional Retirement Account ("TRA"). The details of these accounts are not important for purposes of deciding the pending motions,[2] but it is important to know that, in gener-

---

1. The workings of the pension plan at issue in this case are also described in this Court's recent decision in *Frommert v. Conkright,* 328 F.Supp.2d 420 (W.D.N.Y.2004).

2. A detailed explanation of these accounts can be found in the Second Circuit's decision in this case. *See* 238 F.3d at 207–08.

al, the amounts in each of these accounts would appreciate over time: at an annual fixed rate of one percent above the one-year Treasury Bill rate, in the case of the CBRA, and based on investment results, in the case of the TRA.

As stated, a retiring employee's benefit would be based upon the highest of these three methods. If an employee had received a prior distribution, however (typically because he had previously left Xerox and then returned), the employee's CBRA and TRA balances would be deemed to include not only the monies that were actually in those accounts, but also the amount of the prior distribution, plus the amount that the distribution would have earned had it remained invested in the account from which the distribution was made. If the CBRA or TRA (with this "phantom account" included) yielded the highest benefit of the three calculation methods, the employee's benefit would be based on that account. When determining the employee's *actual* benefit, though, the administrator would then subtract the "phantom account" back out of the relevant account.

In Layaou's case, the administrator determined that (with the "phantom account" included) Layaou's CBRA balance was higher than his TRA balance. He then converted the CBRA balance with the "phantom account" to a monthly annuity of about $820. *See* Becker Aff. Ex. C. The administrator then compared that monthly benefit to Layaou's RIGP Formula monthly annuity of about $492. Since the CBRA benefit was higher, the administrator chose it as the benefit payment method.

For payment purposes, however, the administrator subtracted out the "phantom account" offset from the CBRA and converted that value to a monthly annuity. The CBRA benefit was recalculated to be approximately $162 per month. *Id.*[3]

After learning what his benefit would be, Layaou submitted a request to Xerox for additional benefits, disputing the Plan administrator's use of the "phantom account" offset. Xerox denied the request, and the administrator denied Layaou's subsequent appeal. After exhausting his remedies under the Plan, Layaou filed this action in federal court.

In its decision in this case, the Second Circuit held that that Xerox's summary plan description ("SPD") that was in effect at the time that Layaou's benefits were calculated was inadequate, because it "failed to provide notice to Layaou and other similarly situated employees that their future benefits would be offset by an appreciated value of their prior lump-sum benefits distributions." 238 F.3d at 210. The court therefore concluded that the SPD did not comply with ERISA's requirement that plan participants and beneficiaries be provided with a thorough and easy-to-understand summary of the plan that is "written in a manner calculated to be understood by the average plan participant" and that is "sufficiently accurate and comprehensive to apprise such participants and beneficiaries of their rights and obligations under the plan." *Id.* at 209 (quoting 29 U.S.C. § 1022(a)).[4]

Based on that conclusion, the Court of Appeals also held that "the plan adminis-

---

**3.** Plaintiff alleges that defendants determined that he was entitled to $145 per month, but the calculations submitted by defendants appear to indicate that his monthly benefit was calculated to be $162. Whatever the exact figure is, though, it is clear that he received considerably less than he would have without the application of the "phantom account" offset.

**4.** Xerox's SPD has since been amended to correct the inadequacies cited by the Court of Appeals in *Layaou. See Frommert,* 328 F.Supp.2d at 436, 2004 WL 1737200, at *14.

trator's interpretation of the SPD as permitting application of the 'phantom account' offset to Layaou's benefits is unreasonable under either an arbitrary and capricious or *de novo* standard of review." *Id.* at 211. The court therefore vacated this Court's grant of summary judgment in favor of defendants on Layaou's ERISA claim.[5]

The Second Circuit's decision left certain issues unresolved, however. For instance, the court did not decide "whether Layaou must demonstrate reliance on and/or prejudice flowing from Xerox's faulty SPD in order to prevail on his § 1022(a) claim, and if so, whether Layaou's statements in his affidavit that he read and relied upon the faulty SPD and his yearly benefit calculation are sufficient to raise a triable issue of fact on this issue." *Id.* at 212. In addition, the court stated that

> [o]n remand, the district court should consider, among other things, what damages, if any, the faulty SPD caused to Layaou. In making this determination, the district court may examine what, if anything, Layaou would have done differently had he been given adequate notice that his future benefits would be reduced by an appreciated amount of his prior benefits distributions. The district court may also consider whether, because the SPD did not [adequately explain the application of] the phantom account offset, Xerox is bound to apply a benefit formula that does not conflict with the language of the SPD.

*Id.* at 213 (footnote omitted).

 Subsequent to its decision in this case, the Second Circuit resolved the reliance issue in *Burke v. Kodak Retirement Income Plan,* 336 F.3d 103, 113–14 (2d Cir.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 1046, 157 L.Ed.2d 890 (2004). In

*Burke,* the court adopted a standard of "likely prejudice" in deficient-SPD cases. Under that standard, the plaintiff must show that he "was *likely* to have been harmed as a result of a deficient SPD. Where a participant makes this initial showing, however, the employer may rebut it through evidence that the deficient SPD was in effect a harmless error." *Id.* at 113. Such a rebuttal might be made through evidence that the plaintiff had actual knowledge of the relevant plan provisions, for example. *Id.* at 114 (citing *Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.,* 21 F.Supp.2d 284, 296 n. 7 (S.D.N.Y.1998)).

In their current motions for summary judgment, then, the parties focus chiefly on whether Layaou has demonstrated "likely prejudice" because of the deficient SPD. For the reasons that follow, I find that plaintiff has done so, and that defendants have failed to rebut that showing.

## DISCUSSION

 In support of his motion for summary judgment, plaintiff contends that he has shown likely prejudice based on the disparity between what his benefit would have been without the "phantom account" offset and what he actually did receive after the offset had been applied. In other words, the reduction in the amount of plaintiff's benefit occasioned by the use of the offset, according to plaintiff, is itself prejudice. In addition, Layaou testified at his deposition that, had he been aware of the offset at the time of his rehire, he would have made different investment decisions, and he would have sought to negotiate a higher salary. Defendants' Notice of Motion (Docket # 96), Ex. B at 63–64.

---

5. In a separate summary order, the Court of Appeals affirmed this Court's grant of sum-

mary judgment dismissing Layaou's age discrimination claims.

Defendants, on the other hand, contend that Layaou cannot show any prejudice because, even if the SPD had adequately explained the "phantom account" offset, there is nothing that he could have done differently that would have resulted in his receiving a higher retirement benefit. Since the Plan itself provided for the application of the offset, according to defendants, plaintiff got exactly the benefit to which he was entitled.

To adopt defendants' analysis, though, would effectively be to require plaintiff to show "detrimental reliance" on the faulty SPD, a standard that the *Burke* court rejected. *See* 336 F.3d at 112. Defendants argue that "Layaou did not fail to take any steps that were necessary to obtain more retirement benefits" because "there were no such steps to take." Defendants' Memorandum of Law at 18. Essentially, then, defendants' argument is that the faulty SPD did not cause plaintiff to refrain from doing some act, which in turn caused his benefits to be adversely affected: in other words, that plaintiff did not detrimentally rely on the SPD concerning his benefits at Xerox.

As stated, *Burke* flatly rejected such a standard, on the ground that it would "impose[ ] an insurmountable hardship on many plaintiffs," and would "hardly advance[ ] the Congressional purpose of protecting the beneficiaries of ERISA plans by insuring that employees are fully and accurately apprised of their rights under the plan." *Id.* (quoting *Estate of Ritzer v. Nat'l Org. of Indus. Trade Unions Ins. Trust Fund Hosp., Med., Surgical Health Benefit*, 822 F.Supp. 951, 955–56 (E.D.N.Y. 1993)). Here, the Court of Appeals' prior decision in this case has already established that the SPD that had been provided to plaintiff was inaccurate, and failed to inform plaintiff about the use and effect of the "phantom account" offset. To hold that plaintiff cannot recover because the

*Plan* provides for the offset would run counter to the *Burke* court's admonition that "[t]he consequences of an inaccurate SPD must be placed on the employer," *id.* at 113, and instead would effectively penalize plaintiff for Xerox's issuance of a faulty SPD.

■ Furthermore, the general rule is that "[w]here the terms of a plan and the SPD conflict, the SPD controls." *Id.* The reason for this is that "the SPD 'will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Id.* (quoting *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907–08 (2d Cir.1990)). *See also Heidgerd*, 906 F.2d at 908 ("[i]t is of no effect to publish and distribute a plan summary booklet ... and then proclaim that any inconsistencies will be governed by the plan") (quoting *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985)).

Indeed, the Court of Appeals in this case noted that upon remand, this Court could "consider whether, because the SPD did not [adequately explain the application of] the phantom account offset, Xerox is bound to apply a benefit formula that does not conflict with the language of the SPD." 238 F.3d at 213. Although the court found it unnecessary to decide whether the relevant language contained in the Plan documents was different from the language in the SPD, *id.* at 211, I believe that it is.

The Plan itself quite clearly sets forth the "phantom account" system. It states that where an employee has received a distribution prior to the "relevant time" (generally the time of the employee's retirement), "it shall be assumed that his actual ... Retirement Account balance at the relevant time includes an amount equal to the sum so distributed as it would have increased during the period from the time

of the distribution to the relevant time if such sum had continued to be invested in the ... Retirement Account." *See* Affidavit of Lawrence M. Becker (Docket # 98), Ex. A at 5.

As the Second Circuit noted, however, "[t]he only relevant language in Xerox's SPD states that '[t]he amount you receive may also be reduced if you had previously left the Company and received a distribution at that time.'" *Layaou*, 238 F.3d at 210. There is no reference whatsoever to the "phantom account," either expressly or by description of its application and effect.

All that a Plan participant would understand from the SPD, then, is that his benefit would be reduced because of the prior distribution. He would not know how or to what extent the benefit would be reduced, although he might reasonably assume that the administrator would simply subtract out the value of the prior distribution. Certainly there was nothing in the SPD in effect at the time of plaintiff's retirement that indicated that the plaintiff's benefit would be calculated by first adding the appreciated value of his prior distribution (and thereby inflating the apparent value of plaintiff's CBRA and TRA balances), and then subtracting that amount back out.

In that respect, therefore, the Plan and the SPD, as they existed at the time of Layaou's retirement,[6] were inconsistent. As stated, in that situation, the SPD controls. *See Burke*, 336 F.3d at 111 ("Because the relevant section of the SPD

omits the affidavit requirement [for receipt of benefits], it conflicts with the Plan. Thus, the SPD controls"); *Manginaro*, 21 F.Supp.2d at 293 (SPD controlled where plan imposed two-year statute of limitations on legal actions against an employee welfare fund, but SPD omitted any mention of the statute of limitations).

██ I recognize that not every omission from an SPD of information contained in the plan itself constitutes a "conflict." By definition, a plan summary cannot contain every detail contained in the plan. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 401 (6th Cir.) (en banc), *cert. denied*, 524 U.S. 923, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998). The impact of the "phantom account" offset is no minor detail, however. It resulted in a ·significant reduction in plaintiff's benefits, compared to what he would have received without the offset, or with what he would reasonably have expected his benefit to be, based on the information provided to him in the SPD.

Also, as noted by the Court of Appeals in this case,

The confusion caused by the lack of notice as to how benefits would be calculated for employees who were rehired after receiving lump-sum benefits distributions was compounded by the individualized yearly calculation of estimated benefits Xerox sent to its employees. Layaou's 1994 yearly benefits statement informed him that Xerox calculated his RIGP Formula benefit to be $924 per

---

**6.** It should be noted that my conclusion in this case is not inconsistent with this Court's recent decision in *Frommert*, 328 F.Supp.2d 420, in which I held that the Plan administrator's application of the phantom account offset was not arbitrary or capricious. For one thing, the plaintiffs' claims in *Frommert* were not based on an allegation that the SPD was faulty, but on an argument (which I rejected) that certain amendments to the Plan itself, relating to the "phantom account" offset,

were ineffective. In addition, the challenged decisions in *Frommert* were made years after Layaou retired, by which time the SPD had been amended to clearly set forth the operation of the "phantom account" offset. *See* 328 F.Supp.2d at 436, 2004 WL 1737200, at *14 (noting that the SPD that was issued in September 1995 "fully comports with the Second Circuit's decision in *Layaou*," which found that the 1993 SPD was faulty).

month and his CBRA and TRA benefits to be lump-sums of $18,403 and $9,244 respectively. This estimation of benefits, like the SPD, makes no mention of the "phantom account" offset or the fact that the benefits of rehired employees would be offset by an appreciated amount of prior distributions. *Layaou*, 238 F.3d at 210.

■■■ The Second Circuit has observed that "[i]t is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complicated document, and then proclaim that any inconsistencies will be governed by the plan." *Heidgerd*, 906 F.2d at 908. In the case at bar, the conspicuous absence of any reference to or explanation of the "phantom account" offset, coupled with the annual benefit statements that had been provided to Layaou, would clearly have misled him into believing that his monthly benefit would be considerably higher than it turned out to be. That mistaken belief would likely have affected plaintiff's financial planning for his upcoming retirement, and defendants have not presented any evidence to show that plaintiff was in fact aware of the "phantom account" offset prior to his retirement. Bearing in mind that it is the employer, not the employee, who must bear responsibility for inaccurate or misleading SPDs, *Burke*, 336 F.3d at 113, I conclude that plaintiff has established "likely prejudice" as a result of the faulty SPD, and that defendants have not rebutted that showing.

■■■ Having reached this conclusion, the Court must decide on an appropriate remedy. Since it is the SPD, not the Plan itself, that controls here, *id.*, and since the SPD did not mention the "phantom account" offset, I believe that the administra-tor should recalculate plaintiff's benefit without using any "phantom account" at all. In other words, when comparing plaintiff's three retirement benefit formulas, no "phantom account" should be added to his CBRA or TRA, nor should the "phantom account" be subtracted out from his actual benefit.[7]

That does not mean, of course, that the prior lump-sum distribution cannot be taken into account at all. Even the faulty SPD indicated that the participant's "RIGP benefit may be reduced" if he had received a prior distribution. It would not be unreasonable, then, for the administrator to subtract out the amount of the prior distribution; otherwise, plaintiff would receive a windfall, since under the RIGP formula he would be getting credit for *all* his years of service at Xerox, including years for which he had already received benefits. *See Frommert v. Conkright*, 328 F.Supp.2d 420, 424, 2004 WL 1737200, at *2 (W.D.N.Y.2004) (observing that without some mechanism to reflect prior lump-sum payments received by employees who had previously left Xerox and then returned, "the employee would receive a windfall").

Defendants contend that, should the Court find that plaintiff is entitled to additional benefits, plaintiff's calculation of what the amount of his benefit should be is incorrect in several respects. I believe, however, that the actual calculation of plaintiff's benefits should be performed by the Plan administrator in the first instance. If plaintiff believes that the administrator's calculation is erroneous, and the matter cannot be resolved between the parties, he can seek further relief in this Court.

I also note that plaintiff's motion ostensibly seeks relief under both 29 U.S.C.

---

**7.** Presumably, this would mean that plaintiff's benefit would be derived from the RIGP formula, since without the "phantom account" his CBRA and TRA balances would be relatively low, but I leave it to the administrator to determine this.

§ 1132(a)(1)(B) and § 1132(a)(3). In my prior decision, however, I held that plaintiff had not stated a claim under § 1132(a)(3), *see* 69 F.Supp.2d at 423–24, and I reach the same conclusion now, for the reasons stated in my prior decision.[8] *See also Frommert v. Conkright,* 206 F.Supp.2d 435, 439 (W.D.N.Y.2002) (dismissing plaintiffs' claims under § 1132(a)(3) on the ground that all of the relief requested by plaintiffs could adequately be addressed under § 1132(a)(1)(B)).

Plaintiff has also requested an award of attorney's fees. Although ERISA does give district courts discretion to award fees to a prevailing party, *see* 29 U.S.C. § 1132(g), plaintiff's fee request has not yet been adequately briefed or documented. I therefore direct the parties to file additional submissions on this matter, as set forth in the Conclusion of this Decision and Order, unless they can reach an accord as to the fee request.

█ Lastly, I agree with defendants that Xerox itself is not a proper defendant here. "In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989); *accord Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 509 (2d Cir.2002). Accordingly, defendants' motion for summary judgment is granted insofar as defendants seek dismissal of plaintiff's claims against Xerox.

## CONCLUSION

Plaintiff's motion for summary judgment (Docket # 93) is granted in part and denied in part. Defendant The Retirement Income Guarantee Plan is hereby directed to recalculate plaintiff's retirement benefit, consistent with the terms of this Decision and Order, and to pay plaintiff a lump sum[9] in the amount of the difference between the amount of benefits that plaintiff has received, and the amount of the recalculated benefit, without any consideration of a "phantom account."

Plaintiff shall supplement his motion for attorney's fees no later than twenty (20) days after the date of entry of this Decision and Order. Pursuant to Fed.R.Civ.P. 54(d), plaintiff's submission shall set forth the amount of fees sought, as reflected in contemporaneously prepared time sheets, as well as "the terms of any agreement with respect to fees to be paid for the services for which claim is made." Defendant shall file responding papers to plaintiff's motion no later than fourteen (14) days after the date of filing of plaintiff's supplemental submission.

In all other respects, plaintiff's motion for summary judgment is denied.

Defendants' motion for summary judgment (Docket # 96) is granted in part and denied in part. Defendants' motion is granted as to defendant Xerox Corporation, and plaintiff's claims against Xerox Corporation are dismissed. In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

---

**8.** The Court of Appeals found it unnecessary to reach that issue. *See Layaou,* 238 F.3d at 212 n. 11.

**9.** At least up to this point, plaintiff has always sought a lump-sum distribution rather than an annuity.